### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| M.S. A MINOR, by and through her parents, Emily S. and Drew S., | : : : | |
| | : | 20-cv-5085-JMY |
| vs. | : : | |
| DOWNINGTOWN AREA SCHOOL DISTRICT. | : : : | |

### MEMORANDUM

**Younge, J.**                                                    **October 28, 2022**

This action was filed under the Individuals with Disabilities Education Act (hereinafter "IDEA").  Plaintiffs alleged that Downingtown Area School District (hereinafter "District") violated M.S.'s right to a free appropriate public education (hereinafter "FAPE").  Plaintiffs seek tuition reimbursement to private education at public expense.  M.S. demonstrated developmental delays – she did not walk until two and half years old and displayed a need for help with activities of daily living.  (Due Process Complaint ¶ 6, ECF No. 9-28.)  M.S. has been diagnosed with developmental delays which include Oral Apracia and Childhood Apraxia of Speech (hereinafter "CAS").  (*Id.* ¶ 2, ECF No. 9-28.)

Currently before the Court is a motion for judgment on the administrative record (hereinafter "Defendant's Motion", ECF No. 10) filed by the District, and a cross motion for judgment on the administrative record (hereinafter "Plaintiffs Motion", ECF No. 11) filed by the Plaintiffs.  Plaintiffs have also filed a motion for judgment as a matter of law (hereinafter "Pls. Motion to Supplement", ECF No. 12) in which they seek to supplement the administrative record.  The Court finds this matter appropriate for resolution without oral argument.  See Fed R. Civ. P. 78; L.R. 7.1(f).

For the reasons set forth below, the Court will grant Defendant's motion for judgment on the administrative record and deny the Plaintiffs' cross motion for judgment on the administrative record.  The Court will also deny the Plaintiffs' motion to supplement the administrative record.

## I.     FACTUAL AND PROCEDURAL BACKGROUND:

### A.     Procedural Background:

Plaintiffs filed their due process complaint on October 28, 2019.  (Due Process Complaint.)  In their due process complaint, Plaintiffs seek tuition reimbursement for private education at The Talk School.  (*Id.*)  Plaintiffs allege that the District failed to provide a FAPE, and they assert claims for violation of the IDEA (*Id.* § A) in conjunction with federal and state enabling provisions.  (*Id.* § B-D.)

The matter proceeded to an administrative due process hearing before Hearing Officer Brian Jason Ford, JD.  Testimony and documentary evidence was presented over the course of six days of hearing sessions held on January 17, 2020 (AR N.T., ECF No. 9-11), February 13, 2020 (AR N.T., ECF No. 9-10), February 27, 2020 (AR N.T., ECF No. 9-9), May 18, 2020 (AR N.T., ECF No. 9-8.), June 3, 2020 (AR N.T., ECF No. 9-7) and June 10, 2020.  (AR N.T., ECF No. 9-6.)  Following the submission of written closing arguments, the Hearing Officer rendered his administrative decision in this matter on July 15, 2020.  (Final Decision and Order (hereinafter "HOD"), ECF No. 9-3.)  The decision was entirely in favor of the District, and all relief requested by Plaintiffs was denied.  (*Id.*)

On October 13, 2020, Plaintiffs filed their Complaint with this Court pursuing review and reversal of the Hearing Officer's decision.  (Complaint, ECF No. 1.)  On December 14, 2020, the District filed an Answer to Plaintiffs' Complaint.  (Answer ECF No. 3.)  On March 30, 2021, the

Office of Dispute Resolution certified and submitted a copy of the administrative record to this Court. (ECF No. 9.) The Parties filed motions for judgment on the administrative record which are now before the Court for disposition.

Plaintiffs also sought to supplement the administrative record to introduce testimony from Brittany Huckin, B.A. Ed, M.S. CC-SLP, who was one of M.S.'s teachers at the Talk School (Huckin Declaration, Motion Supplement Record, Ex. A, ECF 12 page 7), and Devon Reed, M.A. CCC-SLP, a speech/language pathologist from the Talk School. (Reed Declaration, *Id.* Ex. B, ECF No. 12 page 117.) Plaintiffs submit documentary evidence along with their request to open the administrative record.

### B.    Factual Background:

At the time this action was filed, M.S. was an eight-year-old student who lived within the boundaries of the District; however, she had not attended a District school. Prior to becoming eligible for kindergarten at the start of the 2019-2020 school year, M.S. was eligible for early intervention services through the Chester County Intermediate Unit ("Chester County"). (AR S-2.) M.S. has delays in cognitive development communication, social emotional development, and physical development. (AR S-2 at 9; HOD at 5, ECF No. 9-3.)

In November 2018, Chester County sought consent from the Parents to conduct an evaluation of M.S. (AR S-2; HOD at 5.) Following the evaluation, around January 2019, Chester County recommended M.S. for a developmental delay classroom, but the family decided to continue with itinerant based services in the typical classroom.[1] (AR S-5 at 4.) For early

---

[1] There are three levels of services. (1) itinerant is special education supports delivered by special education personnel for 20% or less of the school day; (2) supplemental is special education supports delivered by special education personnel for more than 20% of the school day but less than 80% of the school day; and/or (3) full-time is special education supports and services provided by special education personnel for 80% or more of the school day. (AR S-6 at 97.)

intervention, M.S. was receiving 60 minutes per week of speech and language services.  At the request of Parents, the services were delivered in the classroom.  (AR S-2 at 10; HOD at 5.)

Prior to engaging with the District, to plan for the transition from early intervention services to the school age services for the 2019-2020 school year (in December 2018/January 2019), the Parents unilaterally made their first contact with a private school, The Talk School.  Their intent was to explore placement for the 2019-2020 school year at The Talk School.  (Notes of Testimony from Due Process Hearing (Hereinafter "AR N.T.") at 625-26, ECF No. 9-6 through 9-11; HOD at 5-6.)  After the Parent attended a tour of The Talk School, M.S. attended a screening at the cost of $50.00.  (HOD at 6.)  Following the screening, the Parents scheduled a Talk School Placement Evaluation at the cost of $300.00.  (AR N.T. at 678.)

In preparation for M.S.'s transition into its school system, the District requested permission to conduct its own reevaluation report.  (AR S-5, HOD at 5.)  Because Chester County commenced an evaluation shortly before the District issued its permission to complete its reevaluation report, the District included a review of Chester County's testing in the reevaluation report as a basis to determine if additional testing was needed.  (AR S-5 at 3; HOD at 5.)  Chester County had administered the Communication Matrix, where it was determined M.S. was communicating primarily in Level III, unconventional communication.[2]  She also demonstrated some limited skills in Level IV, conventional communications, Level V, concrete symbols, and Level VI, abstract symbols.  (AR S-2 at 10-11.)  Chester County determined M.S. had a receptive and expressive language delay and that standardized assessments could not be

---

[2]  At this level, M.S. was communicating with unconventional pre-symbolic behaviors. These behaviors are pre-symbolic because they do not involve a symbol, and are unconventional because they are not socially acceptable to communicate as students get older.

administered for speech articulation or oral motor planning because M.S. had limited spontaneous speech/imitation.  (AR S-2 at 12; HOD ¶ 28.)

Chester County found M.S.'s adaptive skills were well below what would be expected for a child her age.  (AR S-2 at 18.)  Chester County found that M.S. enjoyed interacting with other students.  Her early intervention regular preschool teacher expressed that M.S. was friendly and affectionate, and initiated interactions with peers and adults.  She smiled in response to others, enjoyed interactive games, and would attempt to join others in a group.  (AR S-2 at 18; HOD ¶ 30.)

In January/February 2019, the Parents completed a child profile questionnaire for the District's reevaluation report.  (AR S-4 at 1.)  The Parents indicated that M.S.'s needs included language development, peer communication, fine motor (spoon, drinking from a cup, puzzles), self-care (dressing, washing body), gross-motor (jumping, throwing, etc.), and motor planning.  (AR S-4 at 1.)  The Parents did not include on the child profile questionnaire that M.S. was receiving private therapy through Jean Allegretto.  They also did not include their exploration of The Talk School for placement.  (AR N.T. at 625-26, 632; HOD page 5.)

On April 26, 2019, the District completed its reevaluation report, finding M.S. continued to be eligible for school age special education services under the category of multiple disabilities.  (AR S-5 at 36; HOD page 5, 7.)  While the District was in the midst of completing its reevaluation report, the Parents continued to work with The Talk School to obtain a placement for M.S. for the 2019-2020 school year.  (HOD page 6.)  The Parents took M.S. to The Talk School in February 2019 and scheduled a placement evaluation for the week of April 29, 2019 through May 3, 2019.  (AR S-10 at 1.)

For the District reevaluation report, the school psychologist, Dr. Heather Carr, completed two classroom observations of M.S.[3]  (HOD page 7.)  One observation was completed at her preschool and the other was completed in the Chester County Intermediate Unit developmental delay classroom.  (AR N.T. at 547-48; S-5 at 12-13.)  For the reevaluation report, one of the District's speech and language pathologists, Julia Houghton, reviewed Chester County records in their entirety, including testing completed by Chester County for the January 11, 2019 reevaluation report, and conducted a classroom observation.  (AR N.T. at 339-40.)  Ms. Houghton determined that a standardized assessment could not be completed due to M.S.'s limited verbal and vocal ability.  (AR N.T. at 341-42.)

For the reevaluation report, the District administered a number of assessments, including the Behavioral Assessment System for Children – Third Edition ("BASC-3"), the Adaptive Behavior Assessment System – Third Edition ("ABAS-3") and the Autism Spectrum Rating Scale ("ASRS").  (AR S-5; N.T. at 559; HOD page 9.)  For the ABAS-3, which measures adaptive skills, the results were consistent between home and school in regard to needs in the area of adaptive skills.  (AR N.T. at 559.)  The ASRS was administered to determine if M.S. qualified also under the category of autism.  (HOD page 9.)  There was a discrepancy between M.S.'s preschool teachers' scores, and the scores obtained by the Parents.[4]  (AR N.T. at 559-60.)

---

[3]  Dr. Carr has been practicing as a school psychologist for 11 years and is a nationally recognized certified school psychologist.  (AR N.T. at 571; S-1 at 1.)  She earned her bachelor's degree in psychology with a minor in writing and rhetoric.  (AR N.T. at 570.)  She also earned her master's degree in educational psychology, a specialist certificate in school psychology and her doctorate in school psychology with a concentration in neuropsychology.  (AR N.T. at 570-71.)

[4]  Most importantly, whether or not the results supported a finding of autism would not have altered DASD recommendation for the life skills placement.  (AR N.T. at 561.)  The life skills classroom has similar programming aspects of the autism placement, such as the use of the Verbal Behavior Milestones Assessment Placement ("VB-MAPP") program, and Applied Behavior Analysis Consultants assist with behavior redirection and facilitating functional communication skills with students.  (AR N.T. at 561.)

As such, the reevaluation report recommended further assessment once M.S. entered the school setting.  (AR N.T. at 586; HOD page 9.)

In early May 2019, well before the District's first Individualized Educational Program (hereinafter "IEP") meeting, the Parents received a copy of The Talk School's Placement Evaluation.  They did not provide a copy of The Talk School's Placement Evaluation to the District before the first of the two IEP meetings.  (AR N.T. at 691.)  There was only a one-point difference on M.S.'s scores on the receptive and expressive language tests administered by The Talk School.  (AR N.T. at 889, 892-93.)

On May 23, 2019 and May 30, 2019, M.S.'s IEP team convened to review the District's reevaluation report and develop the initial IEP.  (AR S-6 at 1; HOD page 9.)  Before the scheduled initial May 2019 IEP meeting, the Parents retained counsel to represent them.  (AR N.T. at 490; HOD ¶ 24.)  Two meetings took place with the Parents to discuss programming and placement.  (HOD page 9.)  One was held via telephone and the other meeting was in person at Pickering Elementary, where the offered placement is located.  (AR N.T. at 549; HOD at 9.)  M.S.'s IEP team recommended placement in the life skills classroom for a portion of the day and in the regular education kindergarten classroom for a portion of the day.  (HOD page10.)

The life skills classroom was recommended because it would focus on all of M.S.'s needs, including daily living, functional skills, pre-academic skills, expressive and receptive communication needs, and fine and gross motor needs, as well as provide opportunities for inclusive practices.  (AR N.T. at 550.)  The language classroom was considered; however, that placement would not address M.S.'s needs in daily living and adaptive skills.  (AR N.T. at 551.)

In preparation for the IEP meeting, Jennifer Merroth, the assigned life skills teacher, observed M.S. in her preschool classroom.[5]  (AR N.T. at 429-40.)  This helped to provide Ms. Merroth, as an experienced teacher and member of the IEP team, with additional information and confidence that her recommendation of placement in the life skills classroom was the most appropriate for M.S.  (AR N.T. at 441-42.)  Parents had concerns with placement in the life skills classroom.  Ms. Merroth addressed Parents' questions via email and also spoke to them further by telephone in order to address their concerns and answer any questions.  (AR N.T. at 446-47, 49; P-16 at 120-21; HOD page13.)  Ms. Merroth strongly believed, based on her educational background and extensive experience, that the life skills placement was appropriate for M.S.  (AR N.T. at 450; HOD page 12.)  In the life skills classroom, there are only 5 to 6 students with multiple exceptionalities from intellectual disability to multiple disabilities, ranging from grades K-4.  (AR N.T. at 48, 60; HOD page 13.)  In addition to the classroom special education teacher, the program also staffs three program assistants, making it close to a 1:1 ratio.  (AR N.T. at 145-46.)

The life skills classroom receives support from the speech and language pathologist, and a consultant from Pennsylvania Training and Technical Assistance Network (hereinafter "PaTTAN").[6]  (AR N.T. at 48; HOD page 13.)  Students within the life skills program receive individualized and small group instruction using the verbal behavior model of instruction.  (AR

---

[5]  Jennifer Merroth was the assigned life skills teacher.  She has extensive experience in working with students with a multitude of needs, and has over 15 years of teaching in the field of special education.  (AR S-1 at 7.)  She earned her bachelor's degree in regular education and special education, her master's degree in educational leadership and literacy, and has her supervisor of special education certificate. She is also a certified literacy specialist.  (AR N.T. at 434.)

[6]  The PaTTAN initiative is a service provided by the state where consultants work with language-based classrooms using the verbal behavior model.  (AR N.T. at 128.)  The consultants provide training and assistance with developing curriculum, instructional practices, specific individual programming, classroom management strategies and behavioral strategies with the teachers.

N.T. at 48.)  Within this program and placement, M.S. would have multiple social opportunities

through inclusion in the life skills classroom and the regular education kindergarten, and through

reverse inclusion.  (AR N.T. at 50.)  M.S.'s FAPE offer included 165 minutes daily of inclusion

opportunities within the regular education kindergarten classroom.  (AR N.T. at 62.)  M.S.'s IEP

included the following related services:

> *(a)* Individual speech and language therapy, 5 sessions per 6 day cycle for 30
> minutes per session; *(b)* Group speech and language therapy, 1 session per 6 day
> cycle for 30 minutes; *(c)* Individual consultation speech and language with the
> CCIU trained speech and language pathologist, 1 session per 6 day cycle for 30
> minutes; *(d)* Additional consultation speech and language therapy for 60 minutes
> per week (AR S-6 at 92); *(e)* Individual physical therapy, 2 sessions per week for
> 30 minutes; *(f)* Individual occupational therapy, 1 session per week for 30 minutes;
> *(g)* Consultative occupational therapy, 1 session per month for 30 minutes per
> session; *(h)* Additional consultative occupational therapy for all IEP members, up
> to 30 minutes per month (AR S-6 at 90); *(i)* Small group adaptive physical
> education, 1 session per 6 day cycle for 30 minutes per session; and (j)  Specialized
> transportation with bus aide, safety seat and curb to curb (AR S-6 at 90).

(HOD ¶ 41.)

M.S.'s IEP provided for therapy and instruction introduced in a distraction-reduced

environment, to mitigate distractions.  (AR N.T. at 64.)  The IEP included a recommendation for

a SETT communication framework where a process is completed through the IEP to review

assistive technology supports assisting with language and communication.  (AR S-6 at 84; N.T.

at 132-33; HOD page 11.)  The IEP included a recommendation for a referral for an evaluation

through CATCH, with a team of experts in the field of autism.  (AR S-6 at 85; N.T. at 133.)  The

IEP included a recommendation for a feeding and swallowing evaluation to determine if there

was a need and if programming should be developed to address a potential need.  (AR S-6 at 85;

N.T. at 134-35.)  The IEP provided for M.S. to have an assigned personal care assistant ("PCA").

(S-6 at 89-90; HOD page 11.)  The PCA would be allotted time to consult with the special

education teacher, regular education teacher and speech therapist, to ensure appropriate carryover of skill practice and generalization.  (AR N.T. at 134-35.)

On or about August 1, 2019, the Parents submitted a report to the District that was completed by Ayesha Ganges during early June and July 2019.  (HOD page 14.)  In response, on August 22, 2019, the District convened an IEP team meeting.  (AR N.T. at 86-7; S-6.)  A summary of what was discussed at the IEP team meeting was documented and added to the IEP. (AR S-6 at 22.)

The District's assigned speech and language pathologist, Rebecca Hermann, reviewed Ayesha Ganges's report and attended the August 22, 2019 IEP team meeting.[7]  (HOD page 15.) At the August 22, 2019 IEP revision meeting, the team agreed to break down the speech and language sessions to shorter increments – instead of 30 minute sessions, the sessions would be 15 minutes to start and then increase to 30 minutes.  (AR N.T. at 466-67, 478-79; HOD page 15.) The District also increased the time M.S. would spend in a regular education kindergarten classroom.  (AR N.T. at 453; S-6 at 97.)  The regular education kindergarten provided many opportunities for exposure to language.  (AR N.T. at 175; HOD page 15.)  This opportunity provided M.S. with the ability to interact with her typically developing peers in a language rich environment.  (*Id.*)  The proposed breakdown for inclusion opportunities follows:

> *(a)* 10 minutes: morning meeting, pledge; *(b)* 105 minutes (ELA): calendar, question of the day, letter focus ((foundations instruction (which is a Wilson program)), high frequency words, whole group read aloud, morning work, days of the week, Habits of the Mind instruction, phonics instruction, literacy centers, writing/journaling; *(c)* 30 minutes (Math): number identification, whole group math instruction following curriculum scope and sequence, teaching of, review and

---

[7]  Ms. Hermann earned her undergraduate degree in speech and hearing sciences from George Washington University and her master's degree in speech and language development from Loyola College.  (A.R. N.T at 217-18.)  She earned her Certificate of Clinical Competency after a 9-month fellowship and passing a national praxis exam.  (A.R. N.T. at 218.)  She has worked with children who have been diagnosed with apraxia for her entire career.  She worked in a public school and with AL Dupont Hospital for Children where she was a senior speech therapist which entailed evaluating and treating children.  (AR N.T. at 221, 226.)

practice of math skills; *(d)* 20 minutes (Encore): [M.S.] will also participate with her Kindergarten peers in the Encore subject areas (Art, P.E., Music, Library).

(Individual Education Program (IEP) from the August 22, 2019 meeting. (S-6, ECF No. 9-12 page 132.)

Plaintiffs contend that they never received an official written copy of the August 22, 2019 revised IEP; however, the Hearing Officer found otherwise. The Hearing Officer found that after the IEP team meeting was concluded, Jennifer Merroth sent the revised IEP and Notice of Recommended Educational Placement (hereinafter "NOREP") to the Parents by U.S. Mail. (AR N.T. at 107, 115, 469-70, 479-80; HOD page 16.) The NOREP was also sent by email to the Parents. (AR N.T. at 126-28; S-12 at 13.) After receiving the revised IEP, the Plaintiffs requested Ayesha Ganges to prepare an addendum to her report, which was submitted to the District on or about September 7, 2019. (AR N.T. at 96-97; HOD page 16.)

On September 11, 2019, Plaintiffs sent the District an email noting they received the revised IEP and reporting their disagreement with the District's FAPE offer. (AR S-14 at 1; P-16 at 271.) Plaintiffs had first retained Ayesha Ganges as an expert to complete an evaluation of M.S. in mid-May 2019. (AR N.T. at 881.) This contact was made before the District held its initial IEP meeting. (AR N.T. at 885.) At the time of scheduling, Parents had already expressed to Ms. Ganges their interest in M.S. attending The Talk School. (AR N.T. at 881, 883.)

Ms. Ganges recommended the time for the direct instruction for oral motor be listed separately in M.S.'s IEP. (AR N.T. at 802-03.) Speech and language, however is interspersed and teaching motor skills and receptive and expressive language skills are also addressed. Ms. Ganges recommended speech and language instruction follow the Dynamic Temporal and Tactile Cueing ("DTTC") approach or methodology. The District takes the position that this is a methodology that most speech therapists use, and that there is no such thing as a certification in

DTTC.  (AR N.T. at 808.)  Along with her battery of testing, Ms. Ganges administered the

Dynamic Evaluation of Motor Speech Skill ("DEMSS"); however, she did not administer this

test in accordance with publisher guidelines.  Ms. Ganges used only 19 of the words out of the 65

from DEMSS – she did not note this deviation in her expert report.  (AR N.T. at 776-77, 900-

03.)

On December 18, 2019, Ms. Ganges observed M.S. at The Talk School for a total of 2

hours.  (AR N.T. at 827-28.)  This observation was well after the date the due process complaint

was filed (October 28, 2019) and the initial due process hearing had already been scheduled.

(AR S-15 at 8.)

## II.      STANDARD OF REVIEW:

Pursuant to Section 1415(i)(2)(C) of the IDEA, in reviewing the Hearing Officer's

decision, this district court shall receive the record of the administrative proceedings, hear

additional evidence at the request of a party, base its decision on the preponderance of the

evidence, and grant such relief as the district court determines is appropriate.  20 U.S.C. §§

1415(i)(2)(C)(i-iii).

An IDEA appeal in the district court is subject to "modified *de novo*" review.  *S.H. v.

State-Operated Sch. Dist. of the City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003).  The district

court "may reach an independent decision, except that it must accord the decision of the [hearing

officer] 'due weight' in its consideration."  *Carlisle Area Sch. Dist. v. Scott P. ex. rel. Bess P.,* 62

F.3d 520, 524 (3rd Cir. 1995) *amended* (Oct. 24, 1995), *cert. denied,* 517 U.S. 1135 (1996).

"Due weight" means "[f]actual findings from the administrative proceedings are to be considered

*prima facie* correct."  *S.H.*, 336 F.3d at 270.  *See also Scott P.,* 62 F.3d at 524.  If the district

court departs from the administrative findings, it must detail why. *S.H.,* 336 F.3d at 270; *Scott P.,* 62 F.3d at 527.

An IDEA appeal is not a do-over. An "independent review" does not mean the district court is to search the record for errors. Litigants must highlight specific and well-cited errors, in effect, mapping the reasons justifying a departure from the decision below. "We just disagree" just doesn't cut it. Likewise, the opinions of professional educators are not to so readily be dismissed. *See also Ridley Sch. Dist. v. M.R.*, Civ. A. 09-2503, 2011 WL 499966, *8 (E.D. Pa. Feb. 14, 2011), *aff'd*, 680 F.3d 260 (3d Cir. 2012). Rather, "the choices made by school officials as to what constitutes an appropriate program for each student" is given "significant deference." *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 277 (3rd Cir. 2012). Lastly, the burden of proof is on the party bringing the administrative complaint, a burden that continues on appeal. *See L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 391-92 (3d Cir. 2006) (citing *Schaffer v. Weast*, 546 U.S. 49, 62 (2005)). "The issue of whether an IEP is appropriate is a question of fact," and the Third Circuit Court of Appeals reviews the district court's factual findings "under a clearly erroneous standard." *D.S. ex rel.,* 602 F.3d at 564; *P.S. ex rel.,* 381 F.3d at 199.

## III.   DISCUSSION:

The Court will analyze the issues presented in this appeal by addressing the alleged errors set forth in Plaintiffs' cross motion for judgment on the administrative record. In their motion for judgment on the administrative record, Plaintiffs attack the manner in which the Hearing Officer weighted the evidence and the inferences that he drew therefrom. Plaintiffs further argue that the Hearing Officer committed errors of law when he relied on certain portions of evidence to reach his findings and conclusions. Finally, Plaintiffs attack the Hearings Officer's finding and ultimate conclusion that they were not entitled to tuition reimbursement because they failed

to establish that the District violated its obligation to provide a FAPE.  The Court will address each allegation of alleged error by the Hearing Officer; it will then move on to address Plaintiffs' motion for judgment as a matter of law – in which they seek to supplement the administrative record.

A summary of Plaintiffs' general theory advanced on appeal is helpful for understanding the specific issues presented in their cross motion for judgment on the administrative record. Plaintiffs argue that the District's IEP failed to provide the programming M.S. required to address her unique and severe Childhood Apraxia of Speech ('CAS") and oral apraxia diagnoses, all of which greatly impacted her ability to communicate and access her education.  They argue that the programs offered in the District in its IEP did not address M.D.'s motor speech/language needs.  They argue that the District failed to perform motor speech/language testing when developing its IEP, failed to include motor speech/language achievement goals in its IEP, and failed to provide motor speech/language therapy.  (AR N.T. 190-191, 788.)  Furthermore, they argue that the District's IEP would have placed M.S. in a regular education classroom for bulk of her school day, without any academic goals or programming.

With regard to motor speech language therapy, Plaintiffs appear to argue that M.S. gained speech/language skills with a combined dual approach or method identified in the administrative record as Prompts for Restructuring Oral Muscular Phonetic Targets (hereinafter "PROMPT") and Dynamic Temporal and Tactile Cueing (hereinafter "DTTC").  The PROMPT technique is a tactile-kinesthetic approach that uses touch cues to a patient's articulators (jaw, tongue, lips) to manually guide them through a targeted word, phrase or sentence.  The technique develops motor control and the development of proper oral muscular movements, while eliminating unnecessary muscle movements, such as jaw sliding and inadequate lip rounding.  (Due Process

Complaint ¶ 11, ECF No. 9-28.)  The DTTC method is also a motor-based approach to speech and language therapy—meaning it is designed to improve the brain's ability to plan and program movement for speech, which most expert believe is the underlying cause of CAS.  The District came forward with evidence to suggest that DTTC is an educational term of art which is simply a name for other methods of speech/language therapy already in use.  Therefore, despite the fact that the DTTC method was not specifically identified in its IEP, it argued that it offered speech/language therapy consistent with the DTTC method in the revised August 22, 2019 IEP. The District rejected the PROMPT method.  Following the August 22, 2019 IEP meeting, Plaintiffs voiced concerns about the ability of the District to provide speech/language therapy consistent with the DTTC method.  (P-16 at 262.)

A.    **The Hearing Officer Did Not Make Factual Errors When He Weighed the Conflicting Testimony and Drew Inference from the Undisputed Facts:**

Plaintiffs argue that the Hearing Officer's Final Decision and Order should be reversed because the Hearing Office made erroneous factual findings which undermine his legal conclusions.  (Plaintiffs' Cross Motion page 13.)  Plaintiffs attempt to create confusion by commingling a minor harmless error in the factual findings with their broader disagreement with how the Hearing Officer resolved conflicting accounts of what occurred during the EIP process.[8] The Hearing Officer evaluated and weighed the conflicting testimony in conjunction with evidence presented at the due process hearing in reaching his ultimate conclusions that were supported by the weight and sufficiency of the evidence presented at Plaintiffs' due process hearing that spanned over six days.  The inferences that the Hearing Officer drew from the facts

---

[8] Defendants concede that the Hearing Officer erred when noting that the August 22, 2019 IEP offered 45 minutes in the regular education classroom compared to the actual offer of 165 minutes daily inclusion in a regular education kindergarten classroom.  (AR N.T. at 453; AR S-6 at 97.)

and weight he afforded certain testimony was not erroneous simply because Plaintiffs disagree with the Hearing Officer.

Plaintiffs primarily argue that the Hearing Officer erroneously framed the case as a dispute over methodology or mode of instruction.  (Plaintiffs' Cross Motion page 13.)  Plaintiffs further argue that the Hearing Officer erred in finding that they received a written copy of the revised or amended IEP created in connection with the August 22, 2019 IEP meeting.  Plaintiffs argue that they never received a written IEP in connection with the August 22, 2019 meeting; therefore, they suggest that the August 2019 offer to provide education is invalid.  Plaintiffs refer to the August 22, 2019 IEP as a verbal offer which should not have been considered by the Hearing Officer.  Plaintiffs claim that the last formal written IEP they received was dated May 30, 2019; therefore, the Hearing Officer should have limited the review of the record to the May 30, 2019 IEP.  (*Id.* at 15.)

Preclusion of the August 22, 2019 IEP is crucial to Plaintiffs' argument that the District's IEP was deficient based on the failure to offer motor speech/language therapy.  Along these same lines, Plaintiffs further argue that the Hearing Officer erred when he relied on witness testimony to reach the factual finding and conclusion that the District offered motor speech/language therapy using a method consistent with the DTTC method.  Plaintiffs highlight the fact that the term DTTC was not specifically referred or mentioned in any of the written IEPs created in relationship to this matter.  Therefore, they posit that the Hearing Officer erroneously found "that the amount of speech/language support offered through the [August 22, 2019 IEP] is consistent with the recommendations in the 2019 Private Evaluation."  (*Id.* at 15 citing Final Decision ¶ 73.)

Faced with competing versions of events, the Hearing Officer found that Plaintiffs received a written copy of the IEP created in connection with the August 22, 2019 meeting prior to filing the due process complaint in October 2019.  This determination was supported by the weight and sufficiency of the evidence.[9]  The Hearing Officer read the August 22, 2022 IEP in conjunction with the witness testimony and reached the conclusion that the District offered motor speech language therapy consistent with the DTTC method.  The Hearing Officer further found that the District could implement the DTTC method.  In reaching the conclusion that the District was offering a method of speech/language therapy consistent with the DTTC method, the Hearing Officer relied on emails sent after the August 22, 2019 IEP meeting and testimony provided by witnesses at the due process hearing.  He further highlighted the fact that Plaintiffs never enrolled M.S. in the District's program; therefore, it was speculative to assume that the District could not implement the programs offered in its IEP.

The Hearing Officer performed his duties as an administrative law judge by weighing the conflicting testimony and evidence, and by drawing appropriate inferences therefrom.  His factual findings were supported by the weight and sufficiency of the evidence.

**B.  The Hearing Officer Did Not Misapply the Law When Reaching the Conclusion that the Evidence Did Not Support a Finding/Conclusion that the District's IEP was Deficient and Violated Its Obligation to Provide FAPE:**

Plaintiffs argue that the Hearing Officer misapplied the law when he considered what they characterize as verbal offers to provide motor speech therapy to M.S.  Along these lines, Plaintiffs argue that the Hearing Officer committed a legal error when he considered the August

---

[9]  Plaintiffs attended the August 22, 2019 IEP conference by phone.  Jennifer Merroth testified that she mailed a copy of the IEP to the parents shortly after the meeting.  (AR N.T. 469-470.)  Jonathan Otto testified to the practice of forwarding IEP's to parents.  (AR N.T.  126-128.)  Rebecca Hermann testified that after the meeting, she received an email from Plaintiffs questioning her ability to provide DTTC.  (P-16 at 262, ECF No. 9-21 page 12.)  Plaintiffs' expert Ganges drafted an addendum to her report in response to the revised IEP that was forwarded to the District on September 7, 2019.  (AR N.T. at 96-97.)  On September 11, 2019, Plaintiffs forwarded an email to the District indicating that they received the revised IEP and were rejecting the same.  (P-16, ECF No. 9-21 page 21.)

22, 2019 IEP because it had not been forwarded to Plaintiffs prior to October 28, 2019 when they filed the due process complaint.  Plaintiffs further argue that the Hearing Officer committed a legal error when he considered witness testimony and evidence outside of the written IEP to find that the District IEP would include motor speech/langue therapy consistent with the DTTC method.  Plaintiffs' argument in this regard bears similarity to their argument raised above in which they argued that the Hearing Officer committed factual errors when he found that Plaintiffs had received a copy of the August 22, 2019 IEP prior to October 28, 2019 which included motor speech/language therapy.  In short, Plaintiffs argue it was legally incorrect for the Hearing Officer to consider what they characterize as verbal offers to provide educational opportunities.

An IEP does not need to explain in specific detail every education opportunity that will be offered to a student, and there is no requirement that it use specific language or terminology to define the method or approach that will be used by educational professionals.  Furthermore, an administrative law judge (hearing officer) may rely to witness testimony offered at an administrative due process hearing to determine whether an IEP meets a school district's requirement to provide a FAPE.  A lack of specific methodology in an IEP is not a procedural error warranting compensatory education or tuition reimbursement.  For example, in *J.E. v. Boyertown Area School District*, 834 F. Supp. 2d 240, 251 (E.D. Pa. February 4, 2011), *aff'd sub nom. J.E. ex rel. J.E. v. Boyertown Area Sch. Dist.*, 452 F. App'x 172 (3d Cir. 2011), the Boyertown Area School District failed to include in the IEP research-based reading, writing, and peer mentoring programs.  Even though these items were missing from the IEP, the court held the school district complied with its legal obligations to offer the student a FAPE under the IDEA.  *Id.*

Similarly, in *W.D. v. Watchung Hills Regional High School Board of Education*, 602 F. App'x 563, 568-569 (3d Cir. 2015), the plaintiffs argued that the student's procedural rights under the IDEA were violated when Watchung Hills refused to adequately respond to their inquiries regarding the methodology the school district planned to use in the Developmental Reading Program.  The Court disagreed stating plaintiffs did not show any violation of a specific IDEA provision or regulation as the school district advised them that the Developmental Reading Program would use a research-based methodology.  *Id.*  The Court stated that "nothing in [the IDEA] ... requires an IEP to include specific instructional methodologies....  The Department [of Education]'s long- standing position on including instructional methodologies in a child's IEP is that it is an IEP Team's decision."  *Id.* at 568 (*citing* 71 Fed. Reg. 46,540, 46,665 (August 14, 2006)).

A district court also denied a plaintiff's claim that a school district violated its requirement to provide a FAPE under the IDEA in *David G. v. Council Rock Sch. District*, No. 06-1523, 2011 U.S. Dist. LEXIS 154719, at *16 (E.D. Pa. Dec. 23, 2011), report and recommendation adopted, No. 06-1523, 2012 U.S. Dist. LEXIS 51427 (E.D. Pa. Apr. 10, 2012). In *David G.* the plaintiff argued, among other things, that the he was denied a FAPE due to "no mention of the use of a systematic or phonics-based program in any of the IEPs provided to [him]."  The Hearing Officer acknowledged deficiencies in the IEPs, however, he found the school district's witnesses were credible and accepted their testimony as to the type of programs offered to the plaintiff to address his specific learning disabilities.  *Id.* at 15-16.  Plaintiff argued on appeal that this conclusion is "based on the general claims of the teachers and virtually ignores the overwhelming documentary and testimonial evidence to the contrary."  *Id.*  The Court deferred to the Hearing Officer's credibility determinations and held any deficiencies in

the IEPs do not counter the Hearing Officer's conclusions about the type of instruction employed by the school district as supported by various teacher's testimony. *Id*.

The district court reached a similar result in *Rachel G. v. Downingtown Area Sch. Dist*., No. 09-3512, 2011 U.S. Dist. LEXIS 74152 (E.D. Pa. July 8, 2011). In *Rachel G.* the school district proposed an IEP that offered multisensory programs, but the IEP did not identify those programs specifically. (*Id.* at 10 & 17.) The IEP also offered 120 minutes of speech therapy, but the IEP did not specify whether the therapy was individual or group. (*Id.* at 16-17.) The plaintiffs claimed that the failure to explicitly define the method and manner in which educational opportunities would be provided denied the student a FAPE. (Id. at 20, 21-22.) The hearing officer relied on testimony and evidence presented at the due process hearing to interpret and expand on the educational opportunities offered in the IEP. (*Id.* at 17-18.) The district court determined the IEP "contains an appropriate level of detail" even though it was missing specific information since the information was provided at the hearing. *Rachel G. v. Downingtown Area Sch. Dist*., No. 09-3512, 2011 U.S. Dist. LEXIS 74152, at *22 (E.D. Pa. July 8, 2011).

The Hearing Officer appropriately applied the law to the evidence to conclude that Plaintiffs failed to establish that the District's August 22, 2019 IEP was deficient and in violation a FAPE. Contrary to Plaintiffs' argument, the Hearing Officer's reliance on testimony and evidence presented at the administrative due process hearing to explain the educational opportunities included in the District's IEP was not legally incorrect. The Hearing Officer appropriately reviewed the evidence and interpreted the testimony of the educational professionals who testified at the administrative due process hearing. These educational

professionals explained how the services in the IEP would be implemented and they established

that this information was conveyed to Plaintiffs prior to filing their due process complaint.[10]

The Hearing Officer committed no legal error in finding that a written revised IEP was

drafted and forwarded to the parents after the August 22, 2019 IEP meeting.  He further

committed to no legal error when he found that the August 22, 2019 IEP established clear

speech/language achievement goals.  In addition, the Hearing Officer committed no legal error

when he found that the District told Plaintiffs that the IEP would include motor speech/language

therapy consistent with the DTTC method or approach.  (See P-16 at 262.)  The Hearing Officer

committed no legal error in rejecting Plaintiffs' argument that the District's educational

professionals were incapable of implementing the educational programs offered in the IEP

including speech/language therapy consistent with the DTTC method.

Plaintiffs were involved in an ongoing IEP process when they unilaterally decided to

place M.S. at the Talk School.  There were numerous meetings and discussions between District

personnel and Parents.  The Parents and the District also communicated extensively about the

details of M.S.'s program before the first due process complaint was ever filed.  As Parents were

intimately involved in the process of crafting M.S.'s IEP and do not contend that they were

unaware of the services M.S. was scheduled to receive, they were not denied their participation

rights.  *See Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 275 (3d Cir. 2012); *W.R. v. Union Beach Bd.

of Educ.*, 414 F. App'x 499, 501 (3d Cir. 2011).

Although parents play a role in the development of an IEP, parents do not have a right to

compel a school district to provide a specific program or employ a specific methodology in

---

[10]  Emails forwarded by Plaintiffs following the August 22, 2019 revised IEP meeting clearly illustrate that they were aware that the District offered speech/language therapy consistent with the DTTC method.  (P-16 at 262, ECF No. 9-21 page 12.)  Plaintiffs' email rejecting the revisited IEP also illustrates their awareness of the District's offer to implement therapy consistent with the DTTC method.  (P-16, ECF No. 9-21 page 23.)

educating a student, even if it is the best possible education for their child, as the district is not required to maximize educational benefits.  *W.R. v. Union Beach Bd. of Educ.*, 414 F. App'x 499, 501 (3d Cir. 2011); *G.K. ex rel. C.B. v. Montgomery Cty. Intermediate Unit*, No. 13- 4538, 2015 U.S. Dist. LEXIS 94667, at *8 (E.D. Pa. July 17, 2015); *K.C. ex rel. Her Parents v. Nazareth Area Sch. Dist.*, 806 F. Supp. 2d 806, 813–14 (E.D. Pa. 2011); *Rowley,* 458 U.S. at 199 (stating that a FAPE does not require "the furnishing of every special service necessary to maximize each handicapped child's potential"); *T.M. on behalf of T.M. v. Quakertown Cmty. Sch. Dist.*, 251 F. Supp. 3d 792, 800 (E.D. Pa. 2017*); J.G. v. New Hope- Solebury Sch. Dist.*, 323 F. Supp. 3d 716, 723 (E.D. Pa. 2018); *J.E. v. Boyertown Area School District*, 834 F. Supp. 2d 240, 251 (E.D. Pa. February 4, 2011), *aff'd sub nom. J.E. ex rel. J.E. v. Boyertown Area Sch. Dist.*, 452 F. App'x 172 (3d Cir. 2011).  "Once it is shown that the Act's requirements have been met, questions of methodology are for resolution by the responsible authorities."  *David G. v. Council Rock Sch. District*, No. 06-1523, 2011 U.S. Dist. LEXIS 154719, at *16 (E.D. Pa. Dec. 23, 2011), report and recommendation adopted, No. 06-1523, 2012 U.S. Dist. LEXIS 51427 (E.D. Pa. Apr. 10, 2012).

For these reasons, the Court rejects Plaintiffs' argument that the Hearing Officer misapplied the law when evaluating conflicting accounts of what occurred to determine the relevant fact and reach an ultimate conclusion.

**C.     Tuition Reimbursement is not Appropriate under the *Burlington-Carter* Test Because the Evidence Did Not Establish a Violation of the IDEA and its Obligation to Provide FAPE:**

The Hearing Officer committed no error of fact or law when he found that the Plaintiffs were not entitled to tuition reimbursement for their unilateral decision to place M.S. at The Talk School.  The Hearing Officer found that the Plaintiffs were unable to carry their burden of proof

by presenting evidence to establish that the District's August 22, 2019 IEP was deficient in that it violated M.S. right to be provided with a FAPE for the 2019-2020 academic school year.  To assess whether Plaintiffs were entitled to tuition reimbursement, the Hearing Officer applied the tripartite test established by *Burlington Sch. Comm v. Dept. of Educ.*, 471 U.S. 359, 369-370 (1985) and *Florence County Sch. Dist. v. Carter*, 510 U.S. 7, 12-16 (1993).  He stopped his analysis at the first-prong of the *Burlington-Carter* test because he found that Plaintiffs were unable to establish a deficiency in the educational opportunities offered in the August 22, 2019 IEP.  The Court finds no error in the Hearing Officers approach or analysis in this instance.

The Supreme Court has established a three-part test – the *Burlington-Carter* test – to determine whether a school district is obligated to fund a unilaterally selected private school placement.  Plaintiffs are eligible to receive private tuition reimbursement provided: "(1) the public school did not provide a FAPE; (2) placement in a private school was proper; and (3) the equities weigh in favor of reimbursement."  *Dept. of Educ. v. D.E.*, No. 17-4433, 2019 U.S. Dist. LEXIS 58922, at *27 (E.D. Pa. Apr. 5, 2019) (citing *Burlington,* 471 U.S. at 369-70, 373-74; and *Florence*, 510 U.S. at 12-16.).

Plaintiffs seek tuition reimbursement for M.S.'s unilateral placement at The Talk School.  "In a case in which [plaintiffs] seek reimbursement for unilateral placement, the Court must first apply the *Burlington-Carter* test and determine whether the IEP afforded the student a FAPE."  *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 198 (3d Cir. Aug 20, 2004).  A satisfactory IEP must provide, "significant learning" and confer "meaningful benefit."  *T.R. ex rel. N.R. v. Kingwood Bd. of Educ.*, 205 F.3d 572, 577 (3d Cir. 2000) (quoting *Polk, Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 247 (3d Cir. 1999).  The state is not, however, required to "maximize the potential of handicapped children."  *Id.* (quoting *Hendrick Hudson Dist. Bd. of*

*Educ. v. Rowley,* 458 U.S. 176, 197 n.21 (1982)).  "[A]t a minimum, the IEP must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential."  *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 182 (3d Cir. 2009).  If the Court concludes that the IEP did not provide a FAPE, the Court must then decide whether the parents took "appropriate actions."  *P.S.*, 381 F.3d at 198 (citing *Michael C. ex rel. v. Radnor Twp. Sch. Dist.,* 202 F.3d 642, 651 (3d Cir. 2000)).  If the public placement violated the IDEA, the court may consider equitable considerations in granting relief – such as tuition reimbursement for appropriate education at public expense.  *See Florence Cnty. Sch. Dist. Four v. Carter by & Through Carter*, 510 U.S. 7, 16 (1993).

The IDEA "open[ed] the door of public education to [disabled] children on appropriate terms" but did not "guarantee any particular level of education once inside."  *Board of Educ. Of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 192 (1982).  "The IDEA's requirements regarding a FAPE are 'modest'."  *D.B. ex re. Elizabeth B. v. Esposito*, 675 F.3d 26, 34 (1st Cir. 2012).  *See, also, A.B. ex rel. D.B. v. Lawson*, 354 F.3d 315, 325 (4th Cir. 2004).  A public school must provide sufficient personalized instruction and support services to offer educational benefit through an IEP that is "reasonably calculated to enable the child to receive educational benefits."  *Rowley,* 458 U.S. at 206-07.

The IDEA requires the states to provide a FAPE to all students who qualify for special education services.  20 U.S.C. §1412.  Local education agencies, including school districts, meet the obligation of providing a FAPE to eligible students through development and implementation of IEPs, which must be "'reasonably calculated' to enable the child to receive 'meaningful educational benefits' in light of the student's 'intellectual potential.'"  *Mary Courtney T. v. School Dist. of Philadelphia*, 575 F.3d 235, 240 (3d Cir. 2009).  Substantively, the IEP must be

responsive to each child's individual educational needs.  20 U.S.C. § 1414(d); 34 C.F.R. §

300.324.

The Third Circuit standard set forth in *Mary Courtney T.*  was confirmed by the United

States Supreme Court in *Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386 (2017).[11]

The *Endrew* case was the Court's first consideration of the substantive FAPE standard since

*Rowley*, 458 U.S. at 206-207.  In *Rowley*, the Court found that a local school district satisfies its

FAPE obligation to a child with a disability when "the individualized educational program

developed through the Act's procedures is reasonably calculated to enable the child to receive

educational benefits."  *Id.* at 207-208.

Before *Endrew*, the Third Circuit interpreted *Rowley* to mean that the "benefits" to the

child must be meaningful, and the meaningfulness of the educational benefit must be relative to

the child's potential.  *See T.R. v. Kingwood Township Board of Education*, 205 F.3d 572 (3rd Cir

2000); *Ridgewood Bd. of Education v. N.E.*, 172 F.3d 238 (3rd Cir. 1999); *S.H. v. Newark*, 336

F.3d 260 (3rd Cir. 2003).  In substance, the holding in *Endrew* is no different.  A school district

is not required to maximize a child's opportunity; it must provide a basic floor of opportunity.

*See, Lachman v. Illinois State Bd. of Educ.*, 852 F.2d 290 (7th Cir.), *cert. denied*, 488 U.S. 925

(1988).  However, the meaningful benefit standard required local school districts to provide more

than "trivial" or "de minimus" benefit.  *See Polk v. Central Susquehanna Intermediate Unit 16*,

853 F.2d 171, 179-180 (3d Cir. 1998), *cert. denied* 488 U.S. 1030 (1989); *see also Carlisle Area*

*School v. Scott P.*, 62 F.3d 520, 533-34 (3d Cir. 1995).  It is well-established that an eligible

student is not entitled to the best possible program, or the type of program preferred by a parent

---

[11]   In *Mary Courtney T.*, 575 F.3d at 240, the Third Circuit stated that an IEP must be "'reasonably
calculated' to enable the child to receive 'meaningful educational benefits' in light of the student's 'intellectual
potential.'"

and is not guaranteed an outcome in terms of a specific level of achievement.  See, e.g., *Lebron*

*v. North Penn School District*, 769 F. Supp. 2d 788 (E.D. Pa. Feb 14, 2011); *Rowly*, 458 U.S.

199 (stating that a FAPE does not require "the furnishing of every special service necessary to

maximize each handicapped child's potential.").

In *Endrew*, the Supreme Court effectively agreed with the Third Circuit by rejecting a

"merely more than de minimus" standard, holding instead that the "IDEA demands more.  It

requires an educational program reasonably calculated to enable a child to make progress

appropriate in light of the child's circumstances."  *Endrew*, 580 U.S. 386, 403 (2017).

Appropriate progress, in turn, must be "appropriately ambitious in light of [the child's]

circumstances."  *Id*.  In terms of academic progress, grade-to-grade advancement may be

"appropriately ambitious" for students capable of grade-level work.  *Id.* at 401.  Education,

however, encompasses much more than academics.  Grade-to-grade progression is not an

absolute indication of progress even for an academically strong child, depending on the child's

circumstances.  *Id.* at 401-403.

When resolving this "difficult problem," *Endrew,* 580 U.S. at 390, "[c]ourts are not to

substitute their own notions of sound educational policy for those of school authorities. . . ,"

*Rowley,* 458 U.S. at 206, a principle reiterated in *Endrew,* 580 U.S. at 404.  The Court, instead,

"must accord significant deference to the choices made by school officials as to what constitutes

an appropriate program for each student."  *Ridley School Dist. v. M.R.,* 680 F.3d 260, 277 (3d

Cir. 2012).  Rejecting the notion "that the IDEA effectively empowers judges to elaborate a

federal common law of public education," *Endrew,* 580 U.S. at 398, the practical importance of

*Endrew* lies in its penultimate paragraph, where it explains that "deference is based on the

application of expertise and the exercise of judgment by school authorities."  *Id.* at 404.

"Application" in the "circumstances" is key: deference is conditioned on "those authorities [being] able to offer a cogent and responsible explanation for their decisions. . . ."  *Id.*

A "reasonably calculated" IEP "requires a prospective judgment by school officials." *Id*. at 399 ("The IEP must aim to enable the child to make progress" and "progress contemplated by the IEP").  This, too, has long been precedent in the Third Circuit where "reasonably calculated" is determined by the knowledge available at the time the IEP is offered and not through hindsight evidence.  *D.S. v. Bayonne Bd. of Educ.,* 602 F.3d 553, 564-565 (3d Cir. 2010); *Susan N. v. Wilson School Dist.,* 70 F.3d 751, 762 (3d Cir. 1995); *Fuhrmann v. East Hanover Bd. of Educ.,* 993 F.2d 1031, 1040 (3d Cir. 1993).  Given the question of "circumstances" and "prospective judgment," "[t]he issue of whether an IEP is appropriate is a question of fact," and the Third Circuit Court of Appeals reviews the district court's factual findings "under a clearly erroneous standard."  *D.S. ex rel.,* 602 F.3d at 564; *P.S. ex rel.,* 381 F.3d at 199.

### C.1.   *The Hearing Officer's Finding and Conclusion that Plaintiffs Were Not Entitled to Tuition Reimbursement:*

The Court finds that there was nothing erroneous about the Hearing Officer's findings or conclusions with regard to the District's FAPE obligation.  After listening to the testimony and reviewing the evidence presented at the administrative due process hearing, the Hearing Officer reached the conclusion that Plaintiffs failed to establish that the District did not meet its FAPE obligation.

The Plaintiffs argued that M.S. required motor speech/language therapy, and that she benefited from a combined approach that incorporated the PROMPT and the DTTC method.  Although the District did not offer the PROMPT method, the Hearing Officer found that the District offered an approach consistent with the DTTC method.  Therefore, he characterized the

dispute between the Parties as one about methodology.  He then applied the law to conclude that

local school districts have broad discretion to make methodology determination.  *Parker C. v.*

*East Chester Area School District*, 2017 WL 2888573, (*Citing Rowely*, 458 U.S. at 199 and

stating school districts are "not required to provide a specific program or employ a specific

methodology requested by the parent."); *see also T.M. v. Quakertown*, 251 F. Supp. 3d 792

(2017) (the court upheld the hearing officer's decision in favor despite the fact that the IEP did

not refer to a specific methodology by name.).

        The Plaintiffs' argument that the August 22, 2019 IEP was deficient because it contained

no motor speech/language achievement goals is simply their argument, and it is unpersuasive.

Credible evidence presented at the due process hearing supports the contrary conclusion that the

August 22, 2019 IEP offered speech/language therapy with clear motor speech/language

achievement goals and objectives.  (AR Ex. 6-S, ECF No. 9-12 page 64-65, 196-197, 220; AR

N.T. 253, 254, 788.)  Despite Plaintiffs' attack on the qualifications of District educational

professionals, evidence presented at the due process hearing did not establish that these

professionals were incapable of offering the services presented in the IEP.  To the contrary,

Rebecca Hermann – a speech\language pathologist from the District – testified to her ability to

offer M.S. speech/language therapy consistent with the DTTC method.  (AR N.T. 261-267, 294-

295.)  The Hearing Officer also correctly recognized that M.S. had never attended any of the

District's programming, meaning that Plaintiffs' assertion that the District was incapable of

providing the services in its IEP was mere speculation.  (HOD page 30.)

        To the extent the Plaintiffs attack the IEP based on the District's failure to test for motor

speech/language skills, the Hearing Officer found that standardized testing was not possible

because of the nature and characteristics of M.S. disability.  (*See* HOD ¶ 28.)  This finding was

supported by the administrative record.  For example, testimony presented at the hearing

established that there is no specific standardized test to diagnose childhood apraxia; rather, there

is a method for making such a diagnosis.  (AR N.T. 352-353, 359-360.)  Plaintiffs' own expert,

Ayesha Ganges, testified that she used altered versions of the standardized tests when she

evaluated M.S.  (AR N.T. at 890-891.)  M.S.'s mother – one of the Plaintiffs in this lawsuit –

testified that she felt that it was hard to gauge M.S.'s true and accurate abilities through

standardized testing because of the non-verbal nature of her disability.  (AR N.T. 645-647.)

Therefore, the Court will not overturn the Hearing Officer's Final Decision by finding that the

August 22, 2019 IEP was deficient for failing to include standardized testing.  The Court will not

require that the District perform specific standardized tests.  Furthermore, it will not find that the

District's proposed methods for treating M.S. or the achievement goal in its IEP were

inappropriate based on a failure to test.

   Credible evidence presented during the administrative due process hearing also supports

the District's decision to place M.S. in a life skills program coupled with partial days in a regular

classroom setting.  Any claim that the District was attempting to place M.S. in a regular

classroom without speech/language support is simply incorrect.  As previously discussed

hereinabove, the August 22, 2019 IEP was replete with educational opportunities which included

motor speech/language therapy.  The decision for partial days in a regular classroom was

supported by evidence in the record.  For example, when M.S. attended early intervention ("EI")

and regular education preschool programming, her teacher in Chester County found that M.S.

enjoyed interacting with other students.  The decision to provide life skills training was also

supported by the evidence of M.S.'s specific needs.  Therefore, the Hearing Officer did not

commit an error when he found that there was a lack of evidence to establish that the IEP was

deficient in meeting M.S.'s individual needs while at the same time providing educational

benefits in the least restrictive setting.

**D.      The Hearing Officer Properly Found that Plaintiffs Are Not Entitled to Reimbursement for a Private Motor Speech Evaluation:**

The Hearing Officer properly found that Plaintiffs are not entitled to reimbursement for

the privately obtained evaluations performed by Ganges.  (Final Decision at 32-33.)  The hearing

Officer's logic and reasoning is appropriate because a prerequisite for obtaining public funding

for a private evaluation is that the recipient must notify the school district that it disagrees with

its evaluation and the recipient must request public funding for a private evaluation.  In this

instance, Plaintiffs did neither prior to obtaining their own private evaluation in 2019.

**E.      Plaintiffs' Motion to Supplement the Administrative Record will Be Denied:**

Plaintiffs have filed a motion to reopen the Administrative Record by having the Court

take testimony from Brittany Hucking, B.A. Ed, M.S. CC-SLP, who was one of M.S.'s teachers

at the Talk School.  (Huckin Declaration, Motion Supplement Record, Ex. A, ECF 12 page 7.).

Plaintiffs also seek to introduce testimony from Devon Reed, M.A. CCC-SLP, a speech/language

pathologist from the Talk School.  (Reed Declaration, *Id.* Ex. B, ECF No. 12 page 117.)

Plaintiffs submit documentary evidence in relationship to both witnesses for the Court's

consideration on appeal.  (Huckin and Reed Declaration.)  Plaintiffs essentially argue that the

Hearing Officer erred when he precluded them from calling witnesses from the Talk School.

Pursuant to Section 615(i)(2)(C) of the IDEA, the court "shall receive and review the

records of the administrative proceedings; shall hear additional evidence at the request of a party;

and basing its decision on the preponderance of the evidence, shall grant such relief as the court

determines is appropriate."  20 U.S.C. § 1415(i)(2)(C)(i)-(iii).  Whether a district court hears

additional evidence is discretionary.  *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 759 (3d Cir. 1995).

In this regard, a court may neither summarily exclude proffered evidence before evaluating its content; nor may a court grant a party *carte blanche* to introduce evidence that was not offered at the administrative hearing, and thus render the administrative proceedings a mere formality.  *Antoine M. v. Chester Upland Sch. Dist.*, 420 F. Supp. 2d 396, 402 (E.D. Pa. 2006) (*citing Susan N.,* 70 F.3d at 758.).  Rather, a court must determine whether the proffered evidence is "relevant, non-cumulative, and useful in determining whether Congress' goal has been reached for the child involved." *Id.* (*quoting Susan N.*, 70 F.3d at 760.).  Additionally, a court must determine whether the party introducing the additional evidence has presented a sufficient justification for not proffering the evidence at the administrative hearing.  *See Susan N.*, 70 F.3d at 760, quoting *Town of Burlington v. Dept. of Educ.,* 736 F.2d 773, 790-91 (1st Cir. 1984).

Plaintiffs do not present a sufficient justification for failing to call witnesses Brittany Huckin or Devon Reed at the administrative due process hearing.  The due process hearing was originally scheduled to commence on December 2, 2019.  The Parties made a joint request for a continuance, and the hearing was rescheduled to commence on January 17, 2020.  On January 11, 2020, Plaintiffs submitted their 5-day disclosures as required by Section 300.512.  The Plaintiffs did not include in their disclosures The Talk School teacher, Brittany Huckin, or the Talk School speech/language pathologist, Devon Reed, as witnesses.

The administrative due process hearing was held over a period of six days.  Plaintiffs were reminded by the Hearing Officer that they were permitted to seek subpoenas for any individual to testify.  (A.R. N.T. at 953-955.)  On May 27, 2020, Plaintiffs elected to make a

request shortly before the last hearing session scheduled for June 3, 2020.  Their request, in sum, was a request to permit the testimony of Devon Reed.  (Email dated May 27, 2020 at 3:18 p.m., Opposition Brief to Motion to Supplement, Ex. A, ECF No. 13-1.)  On June 1, 2020, the Hearing Officer sustained the District's objection, and denied Plaintiffs' request due to the 5-day disclosure rule.  (Email dated June 1, 2020, Opposition Brief to Motion to Supplement, Ex. B, ECF No. 13-2.)  The Hearing Officer identified that the Plaintiffs made a deliberate choice not to include Devon Reed on their 5-day disclosure notice.  A review of the Administrative Record fails to reveal a request to call or subpoena Brittany Huckin as a witness during the administrative due process hearing.

Plaintiffs claim that they did not provide advanced notice of their intention to call these witnesses because they wanted to honor The Talk School's policy of not permitting employees to testify at administrative due process hearings; however, as the hearing progressed The Talk School made an exception to the permitted speech\language pathologist Devon Reed to appear and testify at the hearing.  (Reply to Defendant's Opposition to Motion to Supplement Administrative Record page 1, ECF No. 16.)  If Plaintiffs decided to honor The Talk School's policy of not permitting employees to testify at due process hearings, they did so at their own peril.  In this Court's view, Plaintiffs do not provide a sufficient justification for failing to follow procedure to provide notice of their intention to call these witnesses.  The Court will not reopen the Administrative Record to upend the Final Decision and Order entered by the Hearing Officer after six days of testimony and evidence simply because Plaintiffs decided not to subpoena witnesses for the due process hearing.

Plaintiffs' motion to reopen the Administrative Record will also be denied because the proffered testimony of Brittany Huckin and Devon Reed would appear irrelevant and cumulative

of other witnesses who testified at the administrative due process hearing.  For example, Brittany Huckin attested to the curriculum and method of instruction that M.S. received at the Talk School.  (Huckin Declaration ¶ 4, 9, Motion to Supplement Record, Ex. A, ECF No. 12 page 8.) She identified the use of the DTTC method or approach to motor speech/lanague therapy, and the fact that M.S. had made progress towards her IEP goals since being enrolled in the Talk School. (*Id.* ¶ 4, 13.)  Devon Reed for her part discussed her qualifications as a speech/language pathologist and her knowledge of the PROMPT method for motor speech/language therapy.  (*Id.* ¶ 4.)  She explained that she used an integral stimulation therapy approach which include the DTTC method.  (Reed Declaration ¶¶ 5-6; ECF No. 12 page 117.)  She attested to her ability to explain the curriculum at The Talk School, its implementation of the DTTC method and the evaluation/assessment of M.S. to create motor speech goals.  (*Id.* ¶ 10, 11.)  Reed further attested to her ability to opine that the educational programming offered by the District for the academic year of 2019-2020 along with its goals for achievement were not appropriate for M.S.'s speech\language needs.  (*Id.* ¶ 7.)

Plaintiff argued that the proffered testimony would be relevant to a determination of whether the District offered a FAPE and whether The Talk School was a proper placement. (Memorandum in Support of Motion to Supplement the Administrative Record, ECF No. 12 page 4.)  The question of whether The Talk School was a proper placement for M.S. is largely irrelevant because the Hearing Officer found a lack of evidence to show that the District had violated its FAPE obligation under the IDEA in relationship to the August 22, 2019 IEP. Therefore, Plaintiffs were not entitled to private education at public expense.  Because the Hearing Officer resolved this matter at the first-step of the *Burlington-Carter* test, a determination of whether the Talk School was an appropriate placement for M.S. and/or a

comparison of its program for motor speech/language therapy in relationship to the District's program is unnecessary.

It should also be mentioned that the proffered testimony would be cumulative of other evidence presented at the administrative due process hearing.  For example, relevant portions of The Talk School's IEP were introduced through stipulation.  (A.R. N.T. at 963.)  The Hearing Officer also assumed that M.S. made progress towards her educational goals while at the Talk School.  (Final Decision page 28.)  To the extent that Devon Reed's proffered testimony seeks to offer expert opinions, it would be cumulative of testimony offered by Plaintiffs expert Ayesha Ganges who incidentally testified about her conversations with Devon Reed and other Talk School educational professionals.  (A.R. N.T. at 842, 846, 861-864.)  Therefore, the Court does not need to listen to Ms. Reed's testimony about deficiencies in the District IEP or her opinion about the appropriate method for providing motor speech/language therapy to M.S.

## IV.    CONCLUSION:

For the above reasons, the Defendant's Motion for Judgment on the Administrative Record is GRANTED, the Plaintiffs' Cross Motion for Judgment on the Administrative Record and Motion for Judgment as a Matter of Law is DENIED.  Plaintiffs' Motion to Supplement the Administrative Record is DENIED.  An appropriate order will be entered.


                                                    BY THE COURT:

                                                      /s/ John Milton Younge
                                                    Judge John Milton Younge